**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

PHIL IZZO,

      Plaintiff,

v.

TOWNSHIP OF RARITAN, et al.,

      Defendants.

Civil Action No. 15-1262 (MAS) (TJB)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

    This matter comes before the Court on Defendants Allan Pietrafesa ("Pietrafesa"), Benedict Donaruma, Jr. ("Donaruma") (collectively, "Individual Defendants"), and Township of Raritan's (the "Township") (collectively, with Individual Defendants, "Moving Defendants") Motion to Dismiss Plaintiff Phil Izzo's ("Plaintiff") Second Amended Complaint. (ECF No. 49.) Plaintiff filed opposition (ECF No. 50), and Moving Defendants replied (ECF No. 51). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, Moving Defendants' Motion to Dismiss is GRANTED in part and DENIED in part.

I.  **Background**[1]

On or around September 26, 2005, the Township of Raritan hired Plaintiff as a Building and Electrical Inspector and, on December 28, 2010, Plaintiff was appointed as the Fire Sub-Code Official and Construction Official of the Township of Raritan. (Second Am. Compl. ¶¶ 7, 9, ECF No. 48.) Plaintiff was appointed to a four-year term pursuant to N.J.S.A. 52:27D-126(b), which was scheduled to end on December 28, 2014. (*Id.* ¶ 10.)

On March 15, 2013, Marc Forniciari ("Forniciari"), the Building and Plumbing Sub-Code Official in the Township of Raritan, filed a lawsuit against the Township of Raritan alleging that he was a whistleblower under the New Jersey Conscientious Employee Protection Act ("CEPA"). (*Id.* ¶¶ 12, 14.) In response to Forniciari's lawsuit, "Plaintiff began preparing a summary of relevant information and events, which [Plaintiff then] provided to . . . Pietrafesa[, his superior,][2] and the [Raritan] Township Attorney." (*Id.* ¶ 15.) To work on this summary, and at Pietrafesa and the Township Attorney's request, Plaintiff brought home "background documents, including copies of non-confidential documents, that Plaintiff made from Forniciari's personnel file." (*Id.* ¶¶ 16, 28.) "Plaintiff did <u>not</u> remove the personnel file or any confidential documents." (*Id.*)

"In late June 2013, Plaintiff became aware that Forniciari's personnel file was missing from its usual place, in a cabinet in Plaintiff's office." (*Id.* ¶ 17.) Plaintiff was concerned that Forniciari's personnel file had been stolen and reported to Pietrafesa that the file was missing. (*Id.*

---

[1] For the purpose of this motion, the Court accepts the facts alleged in the Second Amended Complaint as true. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (stating that on a Rule 12(b)(6) motion to dismiss, courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief"). The allegations included in this section are taken directly from Plaintiff's Second Amended Complaint.

[2] Pietrafesa was the Township Administrator for the Township of Raritan. (Second Am. Compl. ¶ 3.)

2

¶ 18.) Pietrafesa never viewed the missing file or its contents. (*Id.* ¶ 19.) Plaintiff was unaware of what happened to the missing file. (*Id.* ¶ 20.)

On or around August 1, 2013, Plaintiff was arrested by the Township of Raritan Police Department (the "RTPD"). (*Id.* ¶ 21.) RTPD Detective Donaruma and County Detective Frank Crisologo ("Crisologo")[3] informed Plaintiff that he was being charged with "official misconduct." (*Id.* ¶ 22.) Defendant Donaruma and Detective Crisologo informed Plaintiff that "he was being charged because a non-party, Donna Alessi [('Alessi')], mailed an envelope from the Hillsborough Post Office on July 3, 2013, containing alleged confidential documents related to Forniciari." (*Id.* ¶ 23.) To obtain the warrant for Plaintiff's arrest, Donaruma submitted an Affidavit of Probable Cause ("Donaruma's Affidavit of Probable Cause"). (Pl.'s Opp'n Br., Ex. 1, ECF No. 50-1.) Donaruma's Affidavit of Probable Cause set forth, in relevant part, the following grounds for establishing probable cause:

> A. On July 18, 2013, at 0900 hrs, Chief Tabasko and Det. Thomas Camporeale of the [RTPD] met with . . . Pietrafesa in regards to a theft of records that had just been discovered. According to Pietrafesa, an employee, identified as Lisa Krieger [("Krieger")] received an envelope that had been marked Return to Sender (RTS). Based on the markings on the envelope it had originally been mailed to . . . Forn[i]ciari . . . . Krieger opened the envelope to find the personnel file of . . . Forn[i]ciari. . . . Krieger immediately delivered the package and envelope to Pietrafesa.
>
> B. . . . Pietrafesa disclosed that [Plaintiff] reported that exact file had been missing from his office. [Plaintiff] is the Raritan Township Construction Official and in charge of maintaining employee[s'] files and is the only one that has accessed [sic] to the locked file where the personnel files are kept. The files are kept in a locked file drawer in [Plaintiff's] locked office. [Plaintiff] reported that Forn[i]ciari's file

---

[3] The Court dismissed all counts without prejudice against Detective Frank Crisologo on October 28, 2015. (Oct. 28, 2015 Order, ECF No. 23.)

3

went missing between the dates of June 20, 2013, and June 27, 2013.

- C. Forn[i]ciari is currently in litigation with the Township of Raritan as well as with [Plaintiff] under a provision in the Federal Whistle[b]lowing Act.

- D. . . . . The Postal Inspector was able to locate the mail transaction . . . . Video surveillance and still photos were later obtained detailing a white female . . . .

- E. Further investigation revealed the identity of the female to be . . . Alessi . . . . It was also learned that Alessi is currently in a dating relationship with [Plaintiff]. . . .

- F. . . . . [Donaruma] pulled [Alessi over] onto the side of the roadway.

- G. . . . . Alessi admitted [to Donaruma] that she was the female in the video and that she had wrote [sic] the return address on the front. Alessi explained that she received the package from [Plaintiff]. Alessi told [Donaruma] that [Plaintiff] removed Forn[i]ciari's personnel file from Raritan Township with the intent to implicate him as well as Stockelberg to hopefully get both employees terminated. According to Alessi, [Plaintiff] had multiple copies of the file when he showed it to her. . . . The envelope also contained a typed letter that appeared to be typed to Forn[i]ciari and was to be assumed written by Stockelberg. Alessi admitted that she was the one that typed the letter as well. Alessi advised that [Plaintiff] has told her that he has many important individuals at his disposal including Freeholders, [l]awyers, and [h]igh [r]anking [p]olice [o]fficials and that is why he never gets caught. Alessi further added that [Plaintiff] has taken additional files not only from within Raritan Township however [sic] in other townships within Hunterdon County as well as Somerset County where he is also a Building Code Official. . . . Alessi added prior to leaving that her relationship with [Plaintiff] lasted about seven months and she recently ended the relationship as a result of her mailing the envelope and no longer trusting him as she described him as a habitual liar.

(*Id.*) The Honorable Stephen B. Rubin, J.S.C., signed the arrest warrant on August 1, 2013. (*Id.*)

4

The Second Amended Complaint alleges that "Pietrafesa and other representatives of the Township of Raritan, including . . . Donaruma, knowingly provided false information to the Hunterdon County Prosecutor's Office [(the 'HCPO'),] as well as the Court in the arrest warrant application, or withheld exculpatory evidence." (Second Am. Compl. ¶¶ 24-25, 30-32.) According to the Second Amended Complaint:

> a. . . . Plaintiff had removed confidential files and engaged in criminal official misconduct. These Defendants were in possession of the alleged "confidential" documents, which were not in fact confidential.
>
> b. . . . Pietrafesa advised investigators that the file that had been mailed was in fact the same file that was reported missing, when in fact [Pietrafesa] had no know [sic] way of confirming that alleged fact.
>
> c. These Defendants were aware that Plaintiff had previously reported the file missing.
>
> d. These Defendants were aware that Plaintiff had gathered documents related to Fornic[i]ari at the Township's request, in defense of the CEPA claim by Fornic[i]ari.
>
> e. These Defendants were aware that Plaintiff was not in fact in a relationship with Alessi.

(*Id.*)

The Second Amended Complaint further alleges that Donaruma failed to conduct an investigation, which would have revealed that:

> a. Non-confidential documents were removed by Plaintiff in preparation of the defense of the Fornic[i]ari lawsuit;
>
> b. Non-confidential documents were removed by Plaintiff at the request of Pietrafesa as well as the [Raritan] Township Attorney;
>
> c. Plaintiff and Alessi were not in a dating relationship, and in fact were estranged, at the time the documents were mailed to the Township [of Raritan].

5

(*Id.* ¶ 28.) Additionally, the Second Amended Complaint alleges:

> 30. Defendant Donaruma falsely advised, in the warrant application, that the package mailed by . . . Alessi contained copies of Forniciari's "personnel file[,"] the file that Plaintiff had reported missing, as well as a letter addressed to Mark Forn[i]ciari that . . . Alessi admitted to typing. On information and belief, these statements were false and either Donaruma was aware these statements were false, or made the statements with reckless regard for whether these statements were false.[]
>
> 31. According to Defendants Donaruma and Pietrafesa, this package could not have been sent without Plaintiff's assistance, because Plaintiff was the only one with a key to the filing cabinet containing these documents. This statement was also false.
>
> . . . .
>
> 33. Defendants Donaruma and Pietrafesa falsely reported to the HCPO, as well as the Court in support of a warrant application, that Plaintiff had devised a plan to have . . . Alessi send this file to Tina Estep, a Township employee, with the hope that this would cause . . . Estep to be fired, thus creating an opportunity for Plaintiff to hire . . . Alessi in an attempt to repair their estranged relationship. Defendants did so with the knowledge that Plaintiff was no longer in a relationship with Alessi, and in fact the relationship had so deteriorated that Alessi was stalking Plaintiff and had a motive to assist Fornic[i]ari and/or hurt Plaintiff.
>
> 34. Alessi was in fact convicted of stealing the documents from Plaintiff's vehicle and of lying to the Raritan Police in the course of the investigation. Had Defendant Donaruma or the Township of Raritan conducted any independent investigation prior to arresting Plaintiff, Plaintiff's innocence, or at least lack of guilt, would have prevented an arrest.

(*Id.* ¶¶ 30-31, 33-34.) In response to discovery requests in the criminal action against Plaintiff and OPRA requests, Defendants never produced the alleged confidential Forniciari documents. (*Id.* ¶ 29.)

6

On or around August 2, 2013, due to the criminal charges against him, Plaintiff was "suspended without pay by the Township of Raritan, without notice or an opportunity for a hearing." (*Id.* ¶ 36.) Furthermore, Plaintiff was terminated from a part-time position he held with the Township of Hillsborough. (*Id.* ¶ 37.) Additionally, Plaintiff participated in and cooperated with the HCPO's investigation that led to his arrest, as Plaintiff voluntarily provided the HCPO with a polygraph test administered to Plaintiff and a video of Alessi breaking into Plaintiff's vehicle, along with the names of two witnesses to a verbal altercation between Alessi and Plaintiff. (*Id.* ¶¶ 38-40.) Although Plaintiff requested discovery related to the charges brought against him by the HCPO, the HCPO never provided discovery (including the allegedly stolen personnel file) and instead offered a plea bargain. (*Id.* ¶¶ 42, 43.)

Sometime afterwards, the HCPO requested Plaintiff's assistance and testimony in connection with its prosecution of Alessi. (*Id.* ¶ 44.) While assisting the HCPO, Plaintiff "learned that the envelope mailed did not in fact contain Forniciari's personnel file, but rather Plaintiff's notes and certain background documents that Plaintiff had prepared at the request of the Township [of Raritan], as part of the Township's defense of Forniciari's CEPA suit." (*Id.* ¶ 44.)

On or about March 31, 2014,[4] the HCPO dismissed all charges against Plaintiff, after which he "attempted, through counsel, to negotiate reinstatement and back pay with the Township of Raritan." (*Id.* ¶¶ 45-46.) On April 21, 2014, Raritan's Township Attorney—who had previously represented Plaintiff in the Forniciari lawsuit—sent Plaintiff correspondence "amending its reasons for Plaintiff's suspension," but the Township of Raritan "did not file new disciplinary charges." (*Id.* ¶¶ 47-48.) The correspondence "alleged that Plaintiff removed confidential files,

---

[4] The Second Amended Complaint states the year 2013, but based on the context of the surrounding allegations, it appears that Plaintiff intended to state 2014 as the year.

7

the same charges that were just dismissed by the [HCPO]," and "that Plaintiff was the target of two [DCA] investigations." (*Id.* ¶¶ 49-50.) The Township of Raritan, however, "did not charge any violations related to the DCA investigations" when the Township of Raritan initially suspended him on August 2, 2013. (*Id.* ¶ 51.)

The Township of Raritan's April 21, 2014[5] correspondence amending the reasons for Plaintiff's suspension did not schedule a date for a hearing as required by N.J.S.A. 40A:62-6(b)(5) and N.J.S.A. 52:27D0-126b. (*Id.* ¶ 52.) Plaintiff further alleges that he did not receive a "RICE" notice, with respect to the charges amended in the April 21, 2014[6] correspondence. (*Id.* ¶ 53 (referencing *Rice v. Union Cty. Reg'l High Sch. Bd. of Ed.*, 382 A.2d 386 (N.J. Super. Ct. App. Div. 1977)).) "On July 9, 2014, Plaintiff received a 'RICE' notice" regarding his Construction Code Official position, which stated that "it is the desire of the [Raritan] Township Committee that [Plaintiff] not be reappointed as the Construction Official **upon the expiration of the four (4) year term** of office." (*Id.* ¶¶ 55-56.) The Raritan Township Council subsequently passed a resolution confirming its decision to not reappoint Plaintiff. (*Id.* ¶ 57.)

Plaintiff's four-year term was scheduled to expire on December 31, 2014. (*Id.* ¶ 58.) On or about August 5, 2014, the Somerset County Prosecutor's Office found that criminal prosecution was not warranted and closed its investigation of Plaintiff. (*Id.* ¶ 59.) Plaintiff further requested that the DCA terminate "any open investigation of Plaintiff." (*Id.* ¶ 60.) "Plaintiff received a copy of the Township Council's decision not to reappoint Plaintiff to his position as Fire Sub-Code

---

[5] The Second Amended Complaint states the year 2013, but based on the context of the surrounding allegations, it appears that Plaintiff intended to state 2014 as the year.

[6] The Second Amended Complaint states the year 2013, but based on the context of the surrounding allegations, it appears that Plaintiff intended to state 2014 as the year.

8

Official" without a "RICE" notice on or about August 20, 2014. (*Id.* ¶ 61.) Plaintiff alleges that as a result of the foregoing events, media outlets and local newspapers published a series of articles "that amounted to a character assassination of Plaintiff," causing emotional and financial strain on Plaintiff and his family. (*Id.* ¶¶ 62-63.) "In October 201[4],[7] as a direct result of the stress created by these events, Plaintiff's wife attempted to take her own life." (*Id.* ¶ 63.) "Plaintiff's daughter was home at the time and contacted 9-1-1 in order to save her mother's life." (*Id.* ¶ 65.)

## II. <u>Legal Standard</u>

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). In addressing a motion to dismiss under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). While a complaint does not need to contain detailed factual allegations to withstand a Rule 12(b)(6) motion to dismiss, a pleader must "provide the 'grounds' of his 'entitle[ment] to relief,' [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 545; *see also* Fed. R. Civ. P. 8(a)(2).

On a motion to dismiss for failure to state a claim, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir.

---

[7] The Second Amended Complaint states the year 2013, but based on the context of the surrounding allegations, it appears that Plaintiff intended to state 2014 as the year.

9

2005). A district court is to conduct a three-part analysis when considering a Rule 12(b)(6) motion to dismiss. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must "review[] the complaint to strike conclusory allegations." *Id.* The court must accept as true all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). In doing so, the court is free to ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678).

### III. Discussion

#### A. Counts One through Four

Counts One through Four of the Second Amended Complaint are pled solely against the Township of Raritan. (*See* Second Am. Compl. ¶¶ 67-94.) Although the table of contents in Moving Defendants' Moving Brief suggests that Moving Defendants are seeking dismissal of Counts One through Four, the substantive section of the Moving Brief does not make those arguments. (*See generally* Moving Defs.' Moving Br.) Rather, the table of contents' reference to these arguments appears to be an error as the Moving Brief does not at all address Counts One through Four. (*Id.*) Accordingly, to the extent Moving Defendants intend to seek dismissal of

10

Counts One through Four, Moving Defendants' Motion to Dismiss is denied with respect to those Counts.

### B. Count Five (Section 1983—wrongful arrest and termination)

Count Five alleges violations of Section 1983 for deprivation of due process arising from Plaintiff's arrest without probable cause and from his termination without the procedural safeguards of notice or public hearing. (Pl.'s Opp'n Br. 17-25, 28-30.) With respect to Individual Defendants, Moving Defendants argue that qualified immunity bars Plaintiff's Section 1983 claims (Moving Defs.' Moving Br. 12-16) and, with respect to the Township of Raritan, Moving Defendants argue that Plaintiff has failed to plead an official policy or custom that led to a constitutional violation that resulted from his termination from employment (*id.* at 21-27).

#### 1. Wrongful Arrest (Individual Defendants)

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (citation omitted). A qualified immunity analysis first requires the Court to determine whether the facts that a plaintiff has alleged "make out a violation of a constitutional right." *Id.* Then, "if the plaintiff has satisfied this first step, the [C]ourt must decide whether the right at issue was 'clearly established' at the time of [D]efendant's alleged misconduct." *Id.* The second prong is met only when it would be "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz,* 533 U.S. 194, 202 (2001). "[L]aw enforcement officials who 'reasonably but mistakenly' conclude that their conduct comports with the requirements of the [law] are entitled to immunity." *Sharrar v. Felsing,* 128 F.3d 810, 826 (3d Cir. 1997).

11

To state a Section 1983 claim for deprivation of procedural due process, a plaintiff is required to allege that "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006) (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)). Plaintiff argues that his alleged wrongful arrest satisfies the first prong, while the lack of probable cause and corroborative investigation, which would have allegedly revealed exculpatory information, satisfies the second prong. (Pl.'s Opp'n Br. 19.)

To prevail on a Section 1983 claim for unlawful arrest, a plaintiff must show that the arresting officer lacked probable cause. *Rogers v. Powell*, 120 F.3d 446, 452-54 (3d Cir. 1997). "Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788 (3d Cir. 2000) (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995)). "[I]n order to survive a motion to dismiss [on a Section 1983 claim for false arrest made pursuant to a warrant], [Plaintiff] must adequately allege '(1) that the police officer 'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create[d] a falsehood in applying for a warrant'; and (2) that 'such statements or omissions [were] material, or necessary, to the finding of probable cause.'" *Shaffer v. City of Pittsburgh*, 650 F. App'x 111, 113-14 (3d Cir. 2016) (quoting *Wilson v. Russo*, 212 F.3d 781, 786-87 (3d Cir. 2000) (citation omitted)).

"[O]missions [in an arrest warrant application] are made with reckless disregard if an officer withholds a fact in his ken that '[a]ny reasonable person would have known that this was

the kind of thing the judge would wish to know.'" *Wilson*, 212 F.3d at 788 (alteration in original) (citation omitted). "Unlike omissions, assertions can be made with reckless disregard for the truth even if they involve minor details—recklessness is measured not by the relevance of the information, but the demonstration of willingness to affirmatively distort truth." *Id.* Such reckless disregard exists where affirmative statements are made with a "high degree of awareness of [the statements'] probable falsity." *Id.* (quoting *Lippay v. Christos*, 996 F.2d 1490, 1501 (3d Cir. 1993).

According to the Second Amended Complaint, Pietrafesa and Donaruma, among "other representatives of the Township of Raritan" withheld exculpatory evidence and provided false information. (Second Am. Compl. ¶¶ 24-25, 28, 30-34.) In addition to the Second Amended Complaint, the Court considers Donaruma's Affidavit of Probable Cause, which was used to obtain an arrest warrant for Plaintiff. (*See* Donaruma's Aff. of Probable Cause); *see also Premier Pork L.L.C. v. Westin, Inc.*, No. 07-1661, 2008 WL 724352, at *2 (D.N.J. Mar. 17, 2008) (stating that courts may consider matters of public record when deciding a motion to dismiss). Accordingly, upon review of the Second Amended Complaint and Donaruma's Affidavit of Probable Cause, and taking the allegations pled by Plaintiff as true, the Court finds that Plaintiff has adequately stated a claim to survive a motion to dismiss.

Here, Individual Defendants' investigation was initiated based on receiving a package from Alessi, which Individual Defendants purportedly believed contained the missing confidential documents. According to Plaintiff, however, the package only contained non-confidential documents that Plaintiff was authorized by Pietrafesa and the Township Attorney to take home. Accordingly, Individual Defendants' probable cause was based primarily on evidence that was inherently exculpatory. The Second Amended Complaint, therefore, sufficiently pleads that Individual Defendants knowingly and deliberately, or with a reckless disregard for the truth, made

false statements or omissions that created a falsehood in applying for a warrant; and that such statements or omissions were material, or necessary, to the finding of probable cause. The Court, therefore, denies Moving Defendants' Motion to Dismiss as to this claim.

1. <u>Wrongful Arrest (Township of Raritan)</u>

Contrary to Plaintiff's analysis, "[i]t is well established that municipal liability under Section 1983 'may not be proven under the respondeat superior doctrine, but must be founded upon evidence that the government unit itself supported a violation of constitutional rights.'" *Benhaim v. Borough of Highland Park*, 79 F. Supp. 3d 513, 521 (D.N.J. 2015) (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). "As a consequence, a municipality may be liable under Section 1983 only where the constitutional injury is alleged to have been caused by a municipal 'policy' or 'custom.'" *Id.* "A municipal policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Id.* (quoting *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "A municipal custom may be shown where a course of conduct, though not authorized by law, is 'so permanent and well-settled as to virtually constitute law.'" *Id.* (quoting *Andrews*, 895 F.2d at 1480). Here, the Second Amended Complaint provides no allegations concerning the Township of Raritan's policy or custom and how the policy or custom constitutes a claim for wrongful arrest under Section 1983. Accordingly, Plaintiff's wrongful arrest claim against the Township of Raritan is dismissed.

2. <u>Termination/Procedural Due Process (Individual Defendants)</u>

Plaintiff's claim with respect to his termination and the purported violation of procedural due process fails to comply with Rule 8(a) of the Federal Rules of Civil Procedure. The Second

14

Amended Complaint contains no allegations regarding Individual Defendants' involvement in the decision to terminate Plaintiff. Accordingly, the Court dismisses this claim.

### 3. Termination/Procedural Due Process (Township of Raritan)

Here, Plaintiff fails to plead that the Township of Raritan had a policy or custom that led to Plaintiff's injuries. Accordingly, the Court dismisses this claim. *Benhaim*, 79 F. Supp. 3d at 521 ("[A] municipality may be liable under Section 1983 only where the constitutional injury is alleged to have been caused by a municipal 'policy' or 'custom.'" (quoting *Bielevicz*, 915 F.2d at 850)); *see also Mulholland v. Gov't Cty. of Berks, Pa.*, 706 F.3d 227, 238-39 (3d Cir. 2013) (dismissing procedural due process claim under Section 1983 against municipal entity because the plaintiff failed to establish a custom or policy that caused the constitutional violation, and because a municipality "cannot be held liable under [Section] 1983 for a single [municipal employee's] alleged deviation of [procedures for conducting adequate investigations]").

### C. Count Six (New Jersey Civil Rights Act)

Count Six is brought under the NJCRA and arises from the same allegations as Count Five. The NJCRA is interpreted analogously with Section 1983. *Hottenstein v. City of Sea Isle City*, 977 F. Supp. 2d 353 (D.N.J. 2013); *Martin v. Unknown U.S. Marshals*, 965 F. Supp. 2d 502 (D.N.J. 2013); *see Chapman v. New Jersey*, No. 08-4130, 2009 WL 2634888, at *3 (D.N.J. Aug. 25, 2009) ("Courts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart . . . . [Section 1983] was intended to 'incorporate and integrate seamlessly' with existing civil rights jurisprudence.") Accordingly, for the reasons set forth above in the Court's discussion of Count Five under Section 1983, Moving Defendants' Motion to Dismiss is denied as to Individual Defendants' purported wrongful arrest, and otherwise granted with respect to Count Six.

### D. Count Seven (Section 1983—Malicious Prosecution)

Count Seven alleges malicious prosecution pursuant to Section 1983 as to all Defendants. (Pl.'s Opp'n Br. 25, 29.)

> To prove malicious prosecution under [S]ection 1983, a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003). "Although prosecutors rather than police officers are generally responsible for initiating criminal proceedings, an officer may . . . be considered to have initiated a criminal proceeding if he or she knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's informed discretion." *Desposito v. New Jersey*, No. 14-1641, 2015 WL 2131073, at *13 (D.N.J. May 5, 2015). The tort of malicious prosecution is "treated with great caution because of [its] capacity to chill resort to our courts by persons who believe that they have a criminal complaint or civil claim against another." *Read v. Profeta*, No. 15-2637, 2017 WL 123438, at *4 (D.N.J. Jan. 11, 2017).

Liability for malicious prosecution "can extend beyond the arresting officer to other officials whose intentional actions set the arresting officer in motion." *Berg v. Cty. of Allegheny*, 219 F.3d 261, 272 (3d Cir. 2000). "[W]hether an arresting officer had probable cause is irrelevant if other 'instigators' lacked probable cause but nevertheless provoked the prosecution." *Garcia v. City of Paterson*, No. 11-6587, 2015 WL 857801, at *3 (D.N.J. Feb. 27, 2015) (explaining that the degree to which proceedings are initiated and sustained because of an official's provocation is highly relevant in determining the official's liability). Courts consider the facts known to the official to determine whether probable cause to institute prosecution existed. *Merkle*, 211 F.3d at

794. Additionally, a public official may be liable for malicious prosecution if he was in possession of additional information, not provided to the prosecution, "that would [have] negate[d] any probable cause they may otherwise have had to prosecute." *Id.*

Here, Plaintiff argues that "the prosecution of criminal charges against him was malicious, brought without any cause to believe that official misconduct occurred, and resolved in his favor." (Pl.'s Opp'n Br. 25.) In relevant part, the Second Amended Complaint pleads that Donaruma and Pietrafesa falsely reported to the HCPO . . . that Plaintiff had devised a plan to have . . . Alessi send [the missing personnel file] to . . . Estep . . . with the hope that this would . . . creat[e] an opportunity for Plaintiff to hire . . . Alessi in an attempt to repair their estranged relationship." (Second Am. Compl. ¶ 33.) As set forth in the Court's discussion of Count Five, Plaintiff alleges that Individual Defendants knew or had a high degree of awareness that Plaintiff never stole the missing personnel file because the package from Alessi that triggered the investigation only contained documents that Plaintiff was authorized to take home. Accordingly, the Court finds that the Second Amended Complaint adequately pleads this claim as to Individual Defendants.

With respect to the Township of Raritan, Plaintiff fails to plead that the Township of Raritan had a policy or custom that led to Plaintiff's injuries. Accordingly, the Court dismisses this claim. *Benhaim*, 79 F. Supp. 3d at 521 ("[A] municipality may be liable under Section 1983 only where the constitutional injury is alleged to have been caused by a municipal 'policy' or 'custom.'" (quoting *Bielevicz*, 915 F.2d at 850)).

### E. Count Eight (Intentional Infliction of Emotional Distress) and Count Nine (Negligent Infliction of Emotional Distress)

Plaintiff brings Count Eight for intentional infliction of emotional distress and Count Nine for negligent infliction of emotional distress as to all Defendants. (Pl.'s Opp'n Br. 27; Second Am. Compl. 18-19.) To state a claim for intentional infliction of emotional distress, a plaintiff

must plead facts showing "intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe." *Taylor v. Metzger*, 706 A.2d 685, 694 (N.J. 1998). Such conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Subbe-Hirt v. Baccigalupi*, 94 F.3d 111, 114 (3d Cir. 1996). Furthermore, "[t]o recover for negligent infliction of emotional distress, a plaintiff must demonstrate that the defendant's negligent conduct placed the plaintiff in reasonable fear of immediate personal injury or sickness." *Thomas v. E. Orange Bd. of Educ.*, 998 F. Supp. 2d 338, 355 (D.N.J. 2014).

Plaintiff alleges that as a result of his wrongful termination and arrest, "Plaintiff's wife attempted to take her own life," "Plaintiff's daughter was home at the time and contacted 9-1-1 in order to save her mother's life," and that these events "created financial and emotional strain on Plaintiff" and "had a dramatic impact on the wellbeing of Plaintiff and his family." (Second Am. Compl. ¶¶ 62-66.) In support of Counts Eight and Nine, Plaintiff relies on conclusory allegations that he experienced "severe emotional distress, embarrassment, humiliation, economic harm, and other damages." (*Id.* ¶ 127.) Plaintiff argues that his allegations are sufficient to allow Plaintiff to "proceed to discovery on these counts." (Pl.'s Opp'n Br. 27.) Plaintiff further argues that the question of whether a duty of care was breached "is a question for the trier of fact." (*Id.*)

After disregarding the conclusory allegations in Plaintiff's Second Amended Complaint, the Court finds that Plaintiff has neither sufficiently alleged facts showing that he suffered severe emotional harm nor facts demonstrating a breach of duty toward Plaintiff. Plaintiff merely presents bare legal conclusions that recite the elements of the cause of action without alleging specific facts that would show the grounds for relief. Accordingly, the Court dismisses Counts Eight and Nine as to Moving Defendants.

F. **Count Ten (Section 1983—Malicious Abuse of Process)**

Count Ten alleges malicious abuse of process as to all Defendants on the grounds that Defendants misused legal procedure in a means not contemplated by law in the events leading up to Plaintiff's arrest. (Pl.'s Opp'n Br. 31.) "[A] section 1983 claim for malicious abuse of process lies where prosecution is initiated legitimately and thereafter [the process itself] is used for a purpose other than that intended by the law." *Rose v. Bartle*, 871 F.2d 331, 350 n.17 (3d Cir. 1989) (citation omitted). "The purpose for which the process is used, *once it is issued*, is the only thing of importance." *Read*, 2017 WL 123438, at *4. "[P]rocess has not been abused unless after its issuance the defendant reveals an ulterior purpose he had in securing it by committing further acts whereby he demonstrably uses the process as a means to coerce or oppress the plaintiff." *Id*. Like malicious prosecution, the tort of malicious abuse of process is "treated with great caution because of [its] capacity to chill resort to our courts by persons who believe that they have a criminal complaint or civil claim against another." *Id*. at 3.

Plaintiff alleges that Defendants "had an ulterior motive in initiating the legal process . . . [and] misused or misapplied the legal procedure in a manner not contemplated by law . . . to obtain a collateral advantage and [to] force [Plaintiff] from his statutory employment." (Second Am. Compl. ¶ 139.) To establish a claim for malicious abuse of process, "there must be some proof of a definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of [the] process." *Kazar v. City of Camden*, No. 15-1527, 2016 WL 680432, at *4 (D.N.J. Feb. 19, 2016) (citation omitted). Here, the Second Amended Complaint fails to allege any purported wrongdoing by Individual Defendants after the criminal proceedings were initiated against Plaintiff. Rather, the allegations against Individual Defendants only pertain to the initial arrest. The Court, accordingly, dismisses this claim with respect to Individual Defendants.

With respect to the Township of Raritan, Plaintiff fails to plead that the Township of Raritan had a policy or custom that led to Plaintiff's injuries. Accordingly, the Court dismisses this claim. *Benhaim*, 79 F. Supp. 3d at 521 ("[A] municipality may be liable under Section 1983 only where the constitutional injury is alleged to have been caused by a municipal 'policy' or 'custom.'" (quoting *Bielevicz*, 915 F.2d at 850)).

IV. **Conclusion**

For the reasons set forth above, Moving Defendants' Motion to Dismiss is GRANTED in part and DENIED in part. An order consistent with this Memorandum Opinion will be entered.

s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

**Dated:** August 31, 2017